# CASES ARGUED and DETERMINED.

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

MARCH TERM, 1921.

---

## G. D. HOOK & CO. *v.* MILLER.

[87 South. 451, No. 21429.]

BROKERS. *Commission not recoverable from third person on exchange of land without contract, unless relation disclosed.*

Where a real estate agent advertised certain property for sale, from which advertisement a correspondence ensued between the agent and a third party, finally resulting in an exchange of lands between the agent's client or customer and the third party, the agent cannot recover a commission of the third party without an express contract, unless he discloses to the third party his relation to the other party.

APPEAL from circuit court of Clay county.

HON. THOS. B. CARROLL, Judge.

Action by G. D. Hook & Co. against William Miller. Judgment for defendant, and plaintiff appeals. Affirmed.

*Kimbrough & Valentine* and *W. N. Ethridge,* for appellant.

Appellant is entitled by law of the land to a reasonable commission, the amount depending upon the amount allowed by customs locally prevailing among this particular class of brokers or dealers or agencies. 19 Cyc., p. 284 (Note); 9 Corpus Juris, p. 590 (Note); 27 L. R. A. (N. S.), p. 1089; 43 L. R. A. (N. S.) p. 91; 5 So. Rep. 157 (Ala.).

125 Miss.] (1)

Appellant takes it to be the law of the land that if a broker, dealer, or agency, uses no discretion, but merely brings together the parties to an exchange or the purchase and sale of property and his employment, then terminates and the parties themselves settle the terms of the transaction, he acts as a mere middle man and may accordingly recover a commission from each party if each party has agreed to pay him and it is immaterial in such case that either party was aware that said broker, dealer or agency was employed by the other. 9 Corpus Juris, 576; note 3; 24 L. R. A. (N. S.) 659; 31 L. R. A. (N. S.) 1222.

Appellant's services were the procuring cause and the commissions or compensation is due. 9 Corpus Juris, p. 611; 62 So. 254, (Ala.); 33 So. 112; 34 L. R. A. (N. S.) 1050; 139 A. S. R., p. 1050; 139 A. S. R., p. 220; 43 So. (La.) 993; 200 Fed. 897. "To bring a purchaser," to find a purchaser, etc., have no real difference in meaning if the broker, dealer or agency is the efficient cause of the parties making a trade. 9 Corpus Juris, p. 611.

The question as to what constitutes the procuring cause is answered in 9 Corpus Juris, p. 611; 40 So. 14 (Miss.).

Appellee and H. Richard Smith were brought together as a result of appellant's efforts and appellee disposed of his city property in Missouri as a result. Appellant is, therefore, entitled to commission even though not present during the negotiations following the introduction nor taking any part therein. 9 Corpus Juris, p. 615, Note 25; 40 So. 14; 9 Corpus Juris, p. 616, et seq.

In the light of all these things, appellant appeals and contends that the four divisions in the assignment of error have been sustained and that the judgment of the trial court should be reversed.

*Gates T. Ivey,* for appellee.

The question of fact was determined by the court, who rendered an opinion, appearing at page 52 of the record.

We invite attention to this opinion which appears to our mind as full of common sense. Relying upon this opinion we cite no authority, believing that court decisions can offer no aid in the solution on the question of fact so well determined by the court below.

Concluding with a brief review of the question of double agency, we may remark that while it is true in this case Richard Smith, the owner of the West Point property, paid no commission to appellants yet their relation was the same as that of double agency for the reason that they claimed to have undertaken the task and trust as brokers to find the appellee somewhere an exchange for his property. In doing so, they had contract with Richard Smith for a division of any commission which might be derived from the owners of property in Mississippi, listed either with Richard Smith or with appellants, in the exchange of which Smith should offer any assistance. If appellants had been employed as brokers for the appellee to find him property in exchange, their relation was one of confidence and their duty was one of faithfully procuring an advantageous proposition; their duty was to find for the appellee a satisfactory exchange and guard his interest in every respect. They claim to have sent appellee to Mississippi to review properties which they had listed, and confess that all of this property in the vicinity of Aberdeen and West Point, was property under which Richard Smith had control along with themselves as real estate agents for commissions. It happened that Smith sold his own property and under the arrangement no commission was paid, but the transaction with Miller, had the claim of appellants been true that they were acting as his brokers, was nevertheless stained with a double dealing, for Miller had no knowledge whatever of the fact that he was in the hands of Richard Smith, an associate of appellants, paid by the owners to do all he could to work off their property.

A certain agreement between brokers representing different principals to divide commission in case the transac-

tion is completed is void as against public policy, and deprives them of the right of compensation, 26 Am. St. Rep. 303, 54 N. E. 499, 19 Cyc. 228, article 4.

In the case of *Bell* v. *McConnell,* reported in 14 Am. Rep., at page 528, the court there holds that a broker acting for both parties in the sale of land cannot recover from either, even though an expressed promise to pay a commission, unless their double agency was with the consent of both parties.

The truth is, it was a part of the consideration moving to appellants in the contract existing between Smith and them, that Smith would act for them, but that in the case of the sale of this particular piece of land, there would be no commission due appellants. Appellants were, therefore, in this way paid. Under the terms of their contract they found it necessary to do all in their power to exchange Smith's lands, whether they were actually paid a pecuiary sum or not.

We feel confident that the judgment of the court below should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was plaintiff below and filed suit for commissions against Miller for an exchange of certain property between William Miller and H. Richard Smith. The suit is predicated upon the following letter written by the appellant to the appellee:

"We have seven hundred acres nine miles from West Point, Mississippi, and four miles from station to Illinois Central Railroad. Overflowing well, fifty acres in alfalfa soil, two hundred fifty acres in black valley land—no overflow; three hundred acres fine merchantable timber; balance open cotton land. A very fine stock proposition.

"Six hundred forty acres same kind of land six miles from Aberdeen, Mississippi; improved; one mile from station on Illinois Central Railroad.

"Also three hundred twenty acres one-half mile from West Point; improved; but neglected; two hundred forty acres open. A fine stock proposition.

"Also six hundred forty acres two miles from West Point, on rock road, several cabins, all under fence, two hundred acres of timber, balance rich lime soil, about three hundred acres alfalfa soil.

"We can trade either of the above for your Dexter property. If you can come down, or let me know what time you can go to West Point, will give you a letter to a party there who will show them to you."

The correspondence between the parties originated by a letter from Miller to W. S. Barr, manager of one department of appellant's business, in reference to a stock farm advertised by the appellant in a newspaper in which Miller inquired whether the appellant would consider taking well-improved city property in Dexter, Mo., for said stock farm. The appellant replied that he could not get a trade on that property, but offered to give favorable terms if Miller would consider a purchase; also stating that if Miller would tell them what kind of property he had for trade, with certain data concerning the property, that appellant might get a trade on something else. Thereupon Miller described his property and stated that he had been offered twelve thousand dollars in St. Louis property, but preferred to either sell or trade for land in Mississippi. Thereupon appellant wrote Miller, stating that they ought to be able to find a trade for him and would do so, and asked if any incumbrance was on Miller's property, and how much loan it would stand, also how much Miller would assume on a good place, and if East Mississippi in the "black belt" suited, or would property in South Mississippi suit.

To this letter Miller replied that from five thousand dollars to seven thousand dollars could be borrowed upon his property, and that he was carrying three thousand five hundred dollars insurance on the house alone; that he had never been in Mississippi and had no information

except reading and hearsay; that he would probably call upon the appellant some time during the month, as he intended trying to locate down there in time for a crop and desired land that would grow alfalfa, corn, wheat, oats, etc., and preferred East or South Mississippi, with good shipping facilities, and referred the appellant to references to himself. Then followed the letter above quoted.

About five days thereafter Miller telegraphed appellant: "Be in Memphis in the morning about eight o'clock." According to Barr's testimony for the appellant he met Miller at the station in Memphis, and gave him the names of some parties who would show him the property embraced in the letter, giving the name of H. Richard Smith at West Point, Miss., who would show the property in that section which included the property finally exchanged. Miller proceeded to South Mississippi and thence to Meridian, and when he reached Meridian, Miss., on the way to West Point, he found he had lost the name of Smith and telegraphed the appellant from Meridian as follows: "Be in West Point this evening. Lost address." Appellant wired back: "Call on H. Richard Smith, West Point." Appellee called upon Smith, looked over different property, and finally traded with Smith by exchanging his property in Dexter, Mo., for a farm which Smith owned near West Point, Miss., described in the above letter. Afterwards the appellant wrote to Miller inquiring the result of the trip to West Point, saying that if no trade had been made that he would try to find something else, and subsequently wrote Miller demanding a commission of six hundred dollars for services in the matter. To this Miller replied that he was at a loss to understand upon what theory appellant looked to him for a commission, "as the land was not listed on any information furnished you at my request. As Mr. Smith owned the land concerned in his half of the trade it seems to me if you had anything due you in the way of commissions you should look to him for settlement. I talked to Mr. Smith personally and showed him your letter and he said it was not quite plain to him."

The appellant thereupon brought suit, and on the trial introduced Mr. Barr, who testified that the property described in the letter above. set out was listed with the appellant by H. Richard Smith, who was a real estate agent at West Point, and that they had an arrangement with each other to divide commissions, but that on the sale of Mr. Smith's property he saved the commission. In other words, the appellant was entitled to no commission from Mr. Smith under their arrangement as to property owned by Mr. Smith which they listed and sold. He further testified that he did not disclose to Mr. Miller the contract and arrangement between H. Richard Smith and the appellant. On this evidence the court sustained the motion of the defendant to strike out the evidence and grant a peremptory instruction which was sustained and judgment duly entered, from which judgment this appeal is prosecuted.          .                          .

. We think the action of the circuit court was correct on the facts in this record. There was nothing to show that Miller knew that appellant was representing both parties, and we think the natural inference from all the circumstances is that Miller understood that the appellant was representing the property owners other than himself, and that he did not understand that the appellant was representing him as his agent. In other words, he was dealing with the appellant as the agent of other persons, and not using the appellant as his agent, and did not know that the appellant was representing both buyer and seller or both parties to the exchange.

There is a difference between a broker and a real estate agent, and we think the appellant, under the facts in this record, was a real estate agent and not a broker. If he is representing both parties, he must disclose to each of the parties his relation to the other.

In 9 Corpus Juris, p. 518, section 20, the following principle is stated:

"Indentity of Principal. Primarily a broker employed to do a particular thing is the agent of the party who

first employs him, and he cannot, without the full and free consent of both parties, be the agent of both throughout the transaction; but in so far as he acts strictly as a middleman to bring the parties together or to execute the contract after the parties have agreed on the terms, such as to effect a purchase or sale of property, he is the common agent of both parties. But where the contract is completed, signed, and delivered, the agency of the broker as to both parties ceases, and if it is sought to bind either party by any action of the broker after the execution of the contract, it must be shown that he had authority to act."

Inasmuch as he admits that he did not bring to the attention of Mr. Miller the fact that he was claiming to be agent of both parties, and did not disclose his agency for H. Richard Smith, he was not entitled to recover from the appellee, and the peremptory instruction was properly given.

*Affirmed.*